UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DEIDRE PIERRE (#445265)

VERSUS                                                CIVIL ACTION

JAMES LEBLANC, ET AL                                  NUMBER 10-618-JJB-SCR


**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.
    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, September 15, 2011.

                                              /s/ Stephen C. Riedlinger
                                              STEPHEN C. RIEDLINGER
                                              UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DEIDRE PIERRE (#445265)

VERSUS                                              CIVIL ACTION

JAMES LEBLANC, ET AL                                NUMBER 10-618-JJB-SCR

MAGISTRATE JUDGE'S REPORT

Before the court is the defendants' Motion for Partial Summary Judgment. Record document number 13. Plaintiff filed an opposition.[1]

For the reasons which follow, the defendants' motion should be granted and the plaintiff's complaint should be dismissed.

**Background**

Pro se plaintiff, an inmate confined at Louisiana Correctional Institute for Women (LCIW), St. Gabriel, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Louisiana Department of Public Safety and Corrections Secretary James M. LeBlanc, Warden Howard Prince, Warden Jim Rogers, Asst. Warden Connie Moore, Asst. Warden Mary Kennedy, classification officer Lynette Tucker, and library supervisor Trulinda Aguillard.

---

[1] Record document number 27. Plaintiff addressed claims in her opposition to the defendants' motion for partial summary judgment which not raised in either the original or amended complaint. Plaintiff's opposition to the defendants' motion shall not be treated as a second amendment to the complaint.

Plaintiff alleged that she was reclassified to a less desirable work assignment in retaliation for preparing an administrative grievance in violation of her constitutional rights.[2] Specifically, the plaintiff alleged that sometime during the week of March 3, 2010, Aguillard read letters that the plaintiff later used to prepare a request for administrative relief (hereafter, "ARP") complaining about deficiencies in the library, which was assigned as ARP LCIW-2010-089. Plaintiff alleged that after Aguillard read the letters she prepared a staff referral form recommending the plaintiff be removed from her job. Plaintiff alleged that on March 11, 2010, Asst. Warden Moore reassigned her from her job as a library counsel substitute (also known as inmate counsel substitute) to the inner yard in retaliation for preparing the ARP. Plaintiff sought relief in form of compensatory and punitive damages, back pay, attorney's fees, restoration to her inmate counsel substitute position with increased pay, and various kinds of injunctive relief.

Defendants moved for summary judgment relying on a statement of undisputed facts, the affidavits of Asst. Warden Moore, Asst.

---

[2] After the defendants moved for summary judgment, the plaintiff supplemented her complaint to allege the following additional claims: (1) she was subjected to unconstitutional conditions of confinement and was denied adequate medical treatment while housed in MHO in February 2010; and, (2) she has been harassed by inmate counsel substitutes and has had to rely on inmate counsel substitutes to perform legal research for her. Record document numbers 9, motion, and 28, order. These claims are also addressed in this report at pp. 15-17.

Warden Kennedy and Aguillard, the results of ARPs LCIW-2010-153, LCIW-2010-89, LCIW-2010-201 and LCIW-2010-202, copies of the plaintiff's mental health records, excerpts from the plaintiff's master prison record, plaintiff's state court petitions filed in the Nineteenth Judicial District Court in the matter of *Deidre Pierre v. Louisiana Department of Public Safety and Corrections*, No. 019-593, 302 and 019-590-543, and a copy LCIW Classification Policy No. 4-02-002.

**Summary Judgement Standard and Applicable Law**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits or declarations must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56©.

**Official/Individual Capacity**

Defendants moved for summary judgment arguing that they are entitled to Eleventh Amendment immunity insofar as the plaintiff sued them in their official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al*, 502 U.S. 21, 112 S.Ct. 358 (1991). A suit against a state official in his official capacity is treated as a suit against the state.

3

*Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's 'policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law. A showing that the official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a section 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device." Officers sued in their personal capacity come to court as individuals. A state official in his or her official capacity, when sued for injunctive relief, would be a person under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14. Thus, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual capacities for

4

actions taken by them under color of state law which caused the deprivation of constitutional rights. In addition, because the plaintiff sought prospective injunctive relief her claims against the defendants in their official capacities are also actionable under § 1983.

**Retaliation**

Plaintiff alleged that she was reclassified to a less desirable work assignment in retaliation for preparing an administrative grievance in violation of her constitutional rights.

Prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. *Woods*, 60 F.3d at 1166.

To prevail on a claim of retaliation, a prisoner must establish four elements: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris*, 449 F.3d at 684; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

5

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods*, 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones*, 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). To demonstrate retaliatory intent the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson*, 110 F.3d at 310; *Woods*, 60 F.3d at 1166. In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris*, 449 F.3d at 684-85; *Hart*, 343 F.3d at 764.

The purpose of allowing inmates retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686 (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584 (1998)). Retaliation against a prisoner is

Case 3:10-cv-00618-JJB -SCR   Document 30   09/15/11   Page 7 of 19

actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris*, 449 F.3d at 686. *De minimus* acts that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id*. Thus, an inmate's job transfer from the commissary to the kitchen was *de minimis*, while his transfer to a more dangerous prison was not. *Id*. at 687; *see also Bibbs v. Early*, 541 F.3d 267, 271-72 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours during each of four consecutive nights was more than *de minimus*).

**Due Process Deprivations**

Plaintiff alleged that Aguillard deleted the plaintiff's files regarding her administrative grievance from the library computer in violation of her Fourth Amendment rights. Plaintiff also claims she was denied due process at the Internal Review Board job reassignment hearing.

The Fourteenth Amendment to the Constitution of the United States provides in pertinent part that no state shall deprive any person of life, liberty or property without due process of law. Imprisoned persons enjoy many protections of the Constitution, but imprisonment carries with it the circumscription or loss of many significant rights. *See, Bell v. Wolfish*, 441 U.S. 520,545, 99 S.Ct. 1861, 1877 (1979). Loss of freedom of choice and privacy are

7

inherent incidents of confinement. *Bell v. Wolfish*, 441 U.S. at 537, 99 S.Ct. at 1873. The Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions. *Hudson v. Palmer*, 468 U.S. 517, 525, 104 S.Ct. 3194, 3200.

Classification of inmates in Louisiana is the duty of the Louisiana Department of Corrections and inmates have no right to a particular classification under state law. *McGruder v. Phelps*, 608 F.2d 1023 (5th Cir. 1979.) Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgement are needed to preserve internal order and discipline and to maintain institutional security. *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864 (1983).

**Supervisory Liability**

Plaintiff named Secretary LeBlanc, Warden Prince, Warden Rogers and Asst. Warden Kennedy as defendants.

To be liable under § 1983, a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to

8

be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983). Simply alleging that a defendants is responsible for the actions of his subordinates is insufficient to state a claim under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

## Analysis
**Retaliation Claim**

The summary judgment evidence showed that in September 2009 inmate Braggs provided legal assistance to inmates assigned to Leo unit, including inmate Linda Qualls.[3] Qualls sent the plaintiff a request for information about child visitation.[4] Plaintiff asked Braggs to relay her response to Qualls but Braggs failed to do so.[5] On September 23, 2009, Qualls committed suicide.[6] Plaintiff believes Qualls committed suicide only after receiving inaccurate legal advice from Braggs.[7]

The summary judgment evidence showed that on January 25, 2010, the plaintiff requested a job change from her job as an inmate counsel substitute to the chapel. Plaintiff's request was

---

[3] Record document number 27-1, p. 16, declaration of Princess LaCaze in support of plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] Record document number 1, Complaint, p. 7.

9

considered and denied because there were no openings at the time.[8]

The summary judgment evidence showed that on February 3, 2010, the plaintiff was assigned as an inmate counsel substitute to Leo unit.[9] On February 4, 2010, the plaintiff went on rounds on Leo unit for the first time since Qualls' death and when she returned to the library she was crying and refused to speak.[10] Inmate LaCaze told Aguillard that she was concerned about the plaintiff and asked Aguillard to speak with the plaintiff.[11] The following day, when LaCaze once again observed the plaintiff crying she reported her concerns to Asst. Warden Kennedy.[12] On February 5, 2010, the plaintiff was placed on mental health observation (hereafter, "MHO").[13] Plaintiff was subsequently released from MHO on February 10, 2010.[14]

The summary judgment evidence showed that just prior to her

---

[8] *Id.* at 6; record document number 14, Exhibit A, plaintiff's Second Step Response to ARP LCIW-2010-153 Second Step Response, p. 13; record document number 16, Exhibit I, Offender to Employee Correspondence Form and Employee to Offender Form, pp. 3-4.

[9] Record document number 27-1, p. 16, declaration of Princess LaCaze.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] Record document number 24, pp. 5-7, Exhibit A, Mental Health Progress Notes.

[14] *Id.* at 13.

10

reassignment, the plaintiff was observed looking out the window and not taking notes during an inmate counsel video training session.[15]

The summary judgment evidence showed that the plaintiff prepared ARP LCIW-2010-089 complaining about deficiencies in the law library including that the facility is not accessible to handicapped inmates, the legal materials are out-of-date, there are inadequate numbers of inmate counsel substitutes, some inmate counsel substitutes provide substandard work, and she is overworked.[16] Plaintiff's ARP was received by prison officials on March 11, 2010, and it was rejected on March 15, 2010 on the grounds that it contained multiple complaints.[17]

The summary judgment evidence showed that on March 10, 2010, the day before the plaintiff's ARP was received, LCIW Classification Manager Monique Christy sent a memorandum to classification officer Lynette Tucker advising that pursuant to instructions by Asst. Warden Moore, the plaintiff was to be reclassified from Library CS to IY Libra.[18] The summary judgment evidence showed that on March 11, 2010, an Internal Review Board

---

[15] Record document number 16-1, Exhibit J, p. 2. Plaintiff alleged in her Complaint that the video training sessions took place on March 8 and 9, 2010. Record document number 1, Complaint, p. 8.

[16] Record document number 14-2, Exhibit B.

[17] *Id*.

[18] Record document number 14-1, Exhibit A, p. 16.

11

conducted a hearing on the plaintiff's administrative job transfer.[19] Plaintiff was reassigned effective March 15, 2010.[20]

The summary judgment evidence showed that prior to her reassignment the plaintiff made several requests for a job transfer, she stated that she was tired and wanted a change, and she was observed daydreaming, crying and doing a minimal amount of work in the law library.[21] On March 10, 2010, Asst. Warden Moore ordered the plaintiff reclassified because her mental health had deteriorated to such an extent she was incapable of performing legal work on behalf of other inmates.[22]

The record is devoid of direct evidence of retaliatory motivation, and the plaintiff has failed to allege a chronology of events from which retaliation may plausibly be inferred. Although the plaintiff alleged that Aguillard read letters the plaintiff later used to draft an ARP, there is no evidence that Aguillard knew that the plaintiff drafted the ARP or was aware of the contents of the ARP. More importantly, there is no evidence that Asst. Warden Moore, who ordered the job reassignment, read either the letters or ARP LCIW-2010-089 before ordering the job

---

[19] *Id*. at 15.

[20] *Id*.

[21] Record document number 16-1, 16-2 and 16-3, Exhibits J, K and L, affidavits of Asst. Warden Moore, Asst. Warden Kennedy and Aguillard,, respectively.

[22] *Id.* Exhibit K.

12

reassignment on March 10.

Moreover, the plaintiff failed to demonstrate that the asserted harm, i.e., the job reassignment, would not have occurred but for the alleged retaliatory motive. She has not controverted the summary judgment evidence that she previously requested a job transfer, she was unresponsive and was observed crying uncontrollably, she was placed under MHO because of her behavior, and she was inattentive during training sessions, and that it was these actions which precipitated the decision to reassign her to another job. Even if retaliation may plausibly be inferred from the alleged chronology of events, the job change was *de minimus*. *Morris*, 449 F.3d at 687. These facts, taken together, fail to create a triable fact issue as to whether the plaintiff suffered a qualifying adverse retaliatory act. *Morris*, *supra.*, at 684.

**Denial of Due Process Claims**

Plaintiff alleged that Aguillard deleted the plaintiff's files regarding her administrative grievance from the library computer in violation of her Fourth Amendment rights.

Plaintiff does not have a Fourth Amendment right to privacy regarding the files contained on the prison library computer, nor a right to maintain her personal or work files on the prison library computer.

Plaintiff alleged that she was denied due process during the Internal Review Board hearing. Specifically, the plaintiff alleged

13

that she was not given a 48 hour notice of the hearing.

Plaintiff has not identified a constitutionally cognizable liberty interest in keeping her inmate counsel substitute job or in connection with the internal review board hearing. *See Jackson v. Cain*, 864 F.2d 1235, 1247 (5th Cir. 1989) ("[A] prisoner has no constitutional right to a specific work assignment."). Absent a constitutionally protected liberty or property interest, a denial of due process claim is unsupportable.

**Reassignment of Plaintiff's Legal Matters**

Plaintiff alleged that after she was reassigned she was not allowed to select the inmate counsel substitute who would assist her with her own pending litigation.

Plaintiff does not have a constitutional right to choose which inmate counsel substitute will be assigned to assist her with her legal matters.

**Supervisory Liability**

Plaintiff named Secretary LeBlanc, Warden Prince, Warden Rogers and Asst. Warden Kennedy as defendants but she failed to allege any facts against them which rise to the level of a constitutional violation. Plaintiff's bare allegation that these defendants are responsible for the actions of their subordinates is insufficient to support a claim under § 1983.

## Amended Complaint

Plaintiff's amended complaint added the following claims: (1) she was subjected to unconstitutional conditions of confinement and was denied adequate medical treatment while housed in MHO in February 2010; and, (2) she was harassed by other inmates and has had to rely on inmate counsel substitutes to perform legal research for her.

An in forma pauperis suit is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733 (1992); *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 1831-32 (1989); *Hicks v. Garner*, 69 F.3d 22, 24 (5th Cir. 1995). A court may dismiss a claim as factually frivolous only if the facts are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional. *Denton,* 504 U.S. at 33-34, 112 S.Ct. at 1733. Pleaded facts which are merely improbable or strange, however, are not frivolous for § 1915(d) purposes. *Id.; Ancar v. SARA Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). Dismissal under § 1915(d) may be made at any time before or after service of process and before or after an answer is filed. *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

Plaintiff alleged that while under MHO she was subjected to unconstitutional conditions of confinement and was denied adequate medical treatment. Specifically, the plaintiff alleged that when she arrived at the mental health unit her cell did not have toilet

paper and she had to ask prison officials to provide her with some. Plaintiff further alleged that she did not receive her medication and had to go to regular pill call in Aquarius unit to get it. Finally, the plaintiff alleged that she was not seen by a psychiatrist while on suicide watch but was forced to meet with him on a number of occasions after she was removed from suicide watch.

Subsection (e) of 42 U.S.C. § 1997e provides:

(e) Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

A review of the allegations in the complaint showed that the plaintiff failed to allege that she sustained any physical injury as a result of the alleged constitutional conditions of confinement and inadequate medical care. Even assuming that the plaintiff has satisfied the statutory injury prerequisite, the allegations are insufficient to rise the level of a constitutional violation.

The Eighth Amendment prohibits only the wanton and unnecessary infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976). Whether the treatment received by an inmate is characterized as inhumane conditions of confinement, a failure to attend to medical needs, or a combination of both, it is appropriate to apply the "deliberate indifference" standard articulated in *Estelle*. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 2327 (1991). In *Seiter*, the Supreme Court stated that, in emergency situations, where prison officials must act "in haste,

16

[and] under pressure", the requisite intent rises to "acting 'maliciously and sadistically for the purpose of causing harm.'" *Seiter*, 501 U.S. at 302, 111 S.Ct. at 2326.

Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Id.*

Plaintiff failed to allege that she was deprived of a single identifiable human need.

Finally, the plaintiff alleged that she has been harassed by inmate counsel substitutes. Specifically, the plaintiff alleged that she has had difficulty checking out needed legal books, she has not received her copy work promptly and she must rely on inmate counsel substitutes to conduct legal research for her.

Plaintiff's dissatisfaction with the work performed by inmate counsel substitutes does not rise to the level of a constitutional violation.

Because it is clear that the plaintiff's claims raised in her amended complaint have no arguable basis in fact or in law the claims should also be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

17

RECOMMENDATION

It is the recommendation of the magistrate judge that the defendants' Motion for Partial Summary Judgment be granted. It is further recommended that plaintiff's claims alleged in the amended complaint be dismissed as frivolous pursuant to 28 U.S.C. §1915(e)(2)(B)(i), and this action be dismissed.

Baton Rouge, Louisiana, September 15, 2011.

*signature: Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE